Mr. Schneider, you have reserved two minutes for rebuttal, so that gives you eight minutes out of the gate. Thank you, and good morning, Your Honors. Under the Social Security Appeal, if you weigh the evidence from both sides, there is not substantial evidence supporting the denial of benefits by the AHO. In looking at the medical evidence, we can see here that the opinions of the examining medical sources are supported by their own examination notes and the other objective and clinical medical evidence-led exams. Also, the three examining medical sources are consistent with the rest of the evidence, including the findings, testimony, and the findings and opinions of the other sources. In a case like this, where there are psychological determinants, you need to look at the clinical notes, as well as the ongoing relationship between the provider and the claimant. There are no, there are not a lot of objective tests. So, my question to you, if I may, given that there aren't a lot of objective tests, the federal regulations doesn't require an ALJ to give deference to any particular examiner, and is there any reason to believe that the ALJ just didn't weigh the information that they were given in a way that's to your client? I mean, for example, like with respect to Nurse Hell, the ALJ found that they were partially persuasive. Why doesn't that actually suggest a thoughtful weighing? In this case, the judge did not consider part three relationship factors that, although you don't need to consider them if opinions are given equal weight, in this case, the Yeah, but while at one time, the law was, and the rule was, and it came from this circuit, that the treating physicians, the examining sources, were given much more weight, and that the ALJ had to give strong reasons for rejecting them. That has been ended, and now we're in a position where these cases are really quite frustrating, because you usually have the treating sources saying one thing, and they kept non-treating sources by the government treating the other, but we're supposed to then say, let the ALJ decide, and that's what the ALJ decided. Now, you know, I may find that troublesome, but isn't that what they're bound to follow? Yeah, I think that's essentially correct, and this is a case, though, where the judge did not correctly weigh the evidence. In this case, he found that nurse practitioner Howell was not persuasive because her own notes found that my client's mood was normal throughout. But if you look through the records here, in fact Well, and to be clear, the ALJ found nurse Howell partially persuasive, right? Right. Okay, so it wasn't not persuasive, it was partially persuasive. But she found if you adopted her well-supported and consistent opinions, that he had market limitations interacting with others and adapting in the workplace, then you would have been, per se, disabled under the listing. And he held, case for the decision, that there was no medical evidence from an acceptable medical source that Mr. Rushford met the listing. So that is not true because she opined that, and he discredited her because over and over and over, her notes said mood is normal. Otherwise, if you looked in her examination notes, she found he was very anxious, he was depressed, he had physical problems, he had chronic pain syndrome. No, but wasn't all of that addressed by the ALJ when assessing insomnia, anxiety, depression? Like, didn't the ALJ rely on the evidence in assessing those symptoms in addition to the pain symptoms? Yes, but he still didn't give full credit where it was due, and Nurse Practitioner Howell's opinions were substantially supported by his own examiner, Dr. Hartman. And they were also supported by the other examiner, Mr. Rasmussen, who said, it's possible, Jamie, mentally in the future to work at the current time, it would be detrimental to his physical health to add the pressure and anxiety of attending and performing work. He was struggling to stay sober. Okay, so maybe I can ask the question in a different way. I mean, part of it is, I mean, because yes, there was Hartman, there was Howell, there's Rasmussen, there was Walker, there was Hennessy, but there's certainly some version of the ALJ considered that. How could we vacate the ALJ here, given the deferential standard that the court has to abide by? Because the ALJ was wrong in relying upon the wrote evidence. But that's what you say, and maybe I think that the ALJ was wrong, but that's not the job I've been given now. I've been given a job of saying, if the ALJ could come out either way, it's not for me to say how they should have come out, is it? They could not come out either way, because that mood is normal was not a basis. And that's what he used to knock credit nurse practitioner Howell over and over again. In any event, the judge found that Mr. Rushford had moderate limitations in the four areas of mental functioning, and he did not include that. To have a moderate limitation in concentration and adapting, you have to put something in the RFC to limit that. And I believe the vocational experts said, if you're off task 10%, then you couldn't work. And also, the ALJ did not credit my client, because he said there's no real evidence of his physical pain. But he was diagnosed with chronic pain syndrome, which is where you feel pain. It's a somatic illness in the CFR, and he didn't include that. He discredited my client because he received conservative treatment. Well, what other treatment is there besides therapy and medication for severe mental illness? He went and had treatment for his cirrhosis. He had treatment for his diabetes. Why would he lie about his limitations and tell the truth about his activities? Now, I think that the mood is normal is not enough. That is not substantial evidence when you look at what was the basis of his denial. And he said over and over that his mood was normal. But normal doesn't mean it was good. For him, a normal mood was bad. He had anxiety and depression. And I don't think any reasonable person, let's assume you're a reasonable people, for the sake of argument. I mean, really, after reading these and seeing that mood is normal, but every place else his mood was horrible, is that substantial evidence? No, I think that might be a scintilla or a shred or a pinch of evidence. But that was the only real reason he used his credit versus practitioner hell. And he did not consider a tertiary relationship. Thank you. All right. Well, you've reserved two minutes for rebuttal, Mr. Schneider. We'll now hear from Ms. Zoltan. Pronouncing your name right. Good morning. May I please record Ariella Zoltan on behalf of the Commissioner? This appeal boils down to Appellant's disagreement with the ALJ's evaluation of the evidence in the record. As discussed at length in the Commissioner's brief, the ALJ cited ample evidence in support of its finding that Appellant retained the ability to perform a range of light, unskilled, simple, and routine tasks. So, can I go back to the question that your colleague on the other side indicated about normal? I think we would all agree that normal doesn't have to mean good, and typical could be bad. Shouldn't the ALJ have asked more questions before discounting it? What I would point out is that four months before the claimants, last in short, the claimants sought treatment at Clinton County Mental Health, and there the claimants sought a psychiatrist, a therapist, and a substance abuse counselor. And notably, all three of these treatment providers noted a divining mood and affect. So now we have three professionals who work in the mental health profession who are evaluating the same individual within the same year-and-a-half span and also noting a normal mood. So it's not simply one provider noting a worry. No, I mean, and that's not my question, because I think normal could mean typical, right? And typical could be bad. The question I have was, given the lack of the limited probative value of a word like Does normal mean typical? Does normal mean good? Does normal mean normal for someone like me or you? Does that mean typical for a person who is impaired? That's the question. Well, I think here it was reasonable for the ALJ to rely on those findings for a few reasons. First, that was a limited… That isn't the question. The ALJ has a duty to make a full record. And the question was, was there something here that the ALJ ought to have done but did not do? We're not arguing whether the balance on what was in the record is something that we can review. The question is, what was missing from the record, and was that an obligation of the ALJ to fill it? We reversed some cases where some specific thing, like an operation or something, was not looked into by the ALJ. And the question is, was there something here that the ALJ should have looked into and didn't? No. The ALJ did not have a duty to further develop the record here, because the ALJ had the treatment notes from the primary care provider, had the treatment notes from the mental health professionals, sent the individual for a consultative examination with a psychologist on two occasions, and then we had two opinions from two review psychologists. So the ALJ had ample evidence from various experts and was therefore able to get a multifaceted view of this famous… But the ALJ didn't address symptoms that were severe, like the claimant's inability to enter a convenience store because the anxiety was so bad. How could something like that not factor into whether or not somebody could actually work? Well, here the ALJ did look at these symptoms, because in evaluating the medical opinions, the ALJ accepted opinions of moderate limitations on account of the claimant's complaints of irritability and anxiety. So it's evident from the ALJ's decision that the ALJ certainly took into account the claimant's subjective symptoms. However, the ALJ then also looked at the objective medical evidence. The ALJ also looked at the opinion evidence and concluded, ultimately, that substantial evidence in this record… Well, so it seems to me a lot of what the ALJ did was accounting for the claimant's moderate limitations by limiting the claimant to simple and routine tasks. But how are those consistent with actually working a full day? Right. Like, a lot of the things that they said that he could do, that the claimant could do at home, are things that are really quick, don't take up a lot of time, don't occupy a day, don't require executive function skills, don't require being able to deal with other people. How did that translate to actually being able to hold down a job with, like, a boss and co-workers and expectations? Well, the ALJ actually did not make that translation on his own. The ALJ relied on opinion evidence from experts. So looking at the opinions from Dr. Walker and Dr. Hensley, who took into account the medical records and the claimant's activities, those sources are claiming that the claimant was able to understand governmental instructions, maintain adequate attention to complete work tasks on a routine basis, sustain a routine, make routine decisions, cope with changes, interact with co-workers and the public, and interact with supervisors. So ultimately, the ALJ is relying on experts who took a look at the complete record, including the claimant's subjective complaints and ADLs, and relied on those opinions to translate that into the claimant's ability to work. But where do you think the ALJ explicitly had dealt with issues like the PTSD? Like, explicit, as opposed to it kind of getting put in the soup. I completely agree that there's whispers of it in everybody's, but, like, how do we have confidence that the chronic pain and the PTSD and the ability to enter a convenience store was dealt with? So the pain was mentioned at page 24 of the ALJ's decision, so it's evident that the ALJ considered the claimant's pain. And ultimately, the burden of proof here is for the claimant to show that his impairments caused functional limitations. So what we're looking at is whether the claimant's chronic pain and whether his PTSD caused additional limitations in his functioning, such that he would be unable to perform the ALJ's RFC finding. And here, Appellant has not let that burden prove. Thank you. All right. Anything further, Ms. Zoltan? Yes, the one thing I would like to add is that Appellant's attorney over here focused on the normal mood, and I would just direct your attention to all of the evidence that we listed in our brief. The detailed clinical findings from Clinton County Mental Health, the clinical findings from Dr. Hartman, the opinions from Dr. Walker and Dr. Hennessy, the claimant's activities of daily living. So it's evident from this ALJ decision that the ALJ did not simply rely on findings of normal mood. All right. Thank you very much. We'll now hear from Mr. Schneider for two minutes of rebuttal. Thank you. The court is correct that the ALJ should have re-contacted nurse practitioner Howell regarding her boilerplate note about normalcy. Besides what normal means, it was clear that this persisted. And the psychiatrist, Dr. Kokernot, at Clinton County Mental Health, prescribed him benzo-diazepam and other strong medications. My opponent noted that the ALJ found evidence in the record about clinical findings, but that's not his job to evaluate it. It's the job of the experts and the medical experts to look at that. Dr. Howell, nurse practitioner Howell, relied on her own exam and own notes, and she included his physical and mental limitations in her report, which was made after Hennessy and Walker looked at the records. They looked at it pretty early, so they didn't even look at the current records from Rasmussen and from Howell. So their opinions were only based on Hartman, and they found less limitations than the commissioner's own examiner who sat down and spent time with him. And Dr. Hartman found moderate to marginal to relative. But the ALJ considered all that, right? I mean, you're not saying that the ALJ overlooked it. You're saying that the ALJ should have assigned different weights. Well, there was not substantial evidence for the ALJ to give more weight to the non-examining consultants and to his own examiner who had a chance to see him. And nurse Howell, nurse practitioner Howell, found that he would be off task 20 percent. And also the chronic pain goes to credibility because the judge found that he exaggerated his pain. Well, he didn't know he was exaggerated. That's the pain that he showed. That's what chronic pain syndrome is. So thank you. All right, well, thank you both. We will reserve decision.